# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN SMITH, | ) | CASE NO. 3:24-cv-01266 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOEHRINGER INGELHEIM | ) | AUGUST 19, 2025 |
| PHARMACEUTICALS, LLC, | ) | |
| *Defendant*. | | |

## <u>MEMORANDUM OF DECISION</u>
### RE: MOTION TO COMPEL ARBITRATION (ECF NO. 20)

Kari A. Dooley, United States District Judge:

Plaintiff Stephen Smith ("Plaintiff" or "Smith") commenced this action via complaint filed July 30, 2024, and thereafter filed the operative Amended Complaint on September 20, 2024. He asserts the following claims against Defendant Boehringer Ingelheim Pharmaceuticals, LLC ("Defendant" or "Boehringer"), his former employer: gender/sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII") (Count One); gender/sex discrimination in violation of the Connecticut Fair Employment Practices Act, Conn. Gen Stat. § 46a-60 *et seq* (the "CFEPA") (Count Two); retaliation/hostile work environment based on sex in violation of Title VII (Count Three); retaliation/hostile work environment based on sex in violation of the CFEPA (Count Four); hostile work environment based on sex in violation of Title VII (Count Five); hostile work environment based on sex in violation of the CFEPA (Count Six); breach of the covenant of good faith and fair dealing (Count Seven); and intentional infliction of emotional distress (Count Eight). Am. Compl., ECF No. 19, at 1. Plaintiff further requests a declaratory judgment that his claims are not subject to arbitration, pursuant to the Ending of Forced Arbitration in Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. § 402(a) (Count Nine). *Id.*

On September 30, 2024, Defendant filed the instant Motion to Compel Arbitration seeking an order compelling arbitration as well as a stay of this action pursuant to the Federal Arbitration Act ("FAA") and an employment arbitration agreement (the "Arbitration Agreement" or the "Agreement") executed by the parties. *See* Def.'s Mot. to Compel, ECF No. 20; Def.'s Mem. in Supp., ECF No. 21. In response, Plaintiff argues that the hostile work environment and/or retaliation claims in his Amended Complaint plausibly allege a "sexual harassment dispute" within the meaning of the EFAA, rendering all of his claims exempt from arbitration. *See* Pl.'s Opp'n, ECF No. 28. Defendant filed a Reply in support of its motion on December 2, 2024. *See* Def.'s Reply, ECF No. 31. For the reasons that follow, Defendant's Motion to Compel Arbitration is GRANTED, and this matter is STAYED pending same.

**Standard of Review**

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quotation marks, alteration, and citation omitted). A party aggrieved by another party's failure or refusal to arbitrate may petition the district court for an order directing that arbitration commence in the manner provided for in the parties' agreement. 9 U.S.C. § 4. In deciding whether arbitration must be compelled, the Court applies a standard comparable to that applied on a motion for summary judgment. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Thus, "[w]hile it is generally improper

to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 613 n.2 (E.D.N.Y. 2011) (quotation marks and citations omitted).

**Background**

### *The Arbitration Agreement*

Plaintiff was employed by Boehringer at its United States headquarters in Ridgefield, Connecticut, from September 2016 through August, 2023. Am. Compl. at ¶ 14. Plaintiff accepted Boehringer's offer of employment by signing an offer letter on September 19, 2016. Def.'s Mem. in Supp. at 2; Def.'s Mem. in Supp., Ex. B ("Offer Letter"), ECF No. 21-1 at 7–10.[1] The letter expressly stated that the offer of employment was "contingent upon [Plaintiff] acknowledging receipt and acceptance of the Boehringer Ingelheim Employment Arbitration Agreement and Rules (the Agreement) by signing the Acknowledgement of the Agreement that is enclosed with this letter." Offer Letter at 9. Plaintiff signed the acknowledgment the same day. *Id.* at 10.

The Arbitration Agreement provides, in relevant part:

This Arbitration Agreement makes arbitration the required and exclusive forum for the resolution of all disputes (except for those set forth in paragraph 4 below) arising out of or in any way related to employment based on legally protected rights (e.g., statutory, equitable, regulatory, contractual or common law rights) that may arise between an employee or former employee and the Company… including, without limitation, claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Worker Adjustment and Retraining Notification Act, and all amendments thereto and any other federal, state or local statute, regulation or common law doctrine regarding employment, employment discrimination,

---

[1] Defendant filed all exhibits to its Memorandum in Support as a single attachment at ECF No. 21-1. For ease of reference, when citing to those exhibits the Court cites to the page numbers provided by the CM/ECF system.

harassment, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, retaliation, or whistleblowing (such as, for example, the New Jersey Law Against Discrimination).

Ex. C ("Arbitration Agreement") at 12. The Agreement also specifies potential claims that it does not cover, including Worker's Compensation claims, ERISA claims, and claims "which by federal law may not be subject to mandatory pre-dispute arbitration." *Id.* at 13.

### *Allegations*[2]

During his seven years working for Boehringer, Plaintiff was the Vice President ("VP") of the department called National and Regional Payor Sales ("Payor Sales"), where he reported to the Senior VP ("SVP") for the "Primary Care" department. Am. Compl. at ¶¶ 15–18. Plaintiff replaced another VP, Christine Marsh ("Marsh"), in that role. *Id.* at ¶ 19. Prior to Plaintiff's hiring, Marsh was reassigned as the head of "Market Access," a position to which Plaintiff did not report, but which reported directly to Boehringer's President. *Id.* Shortly after he started, Plaintiff had a conversation with Marsh in which she answered him using a "hostile" tone. *Id.* at 20. Plaintiff alleges that Marsh was unhappy with the change of roles and inferred, based on her "tone of voice, body language, and facial expressions," that "she resented being replaced by a male such as the Plaintiff." *Id.*

Over the entirety of his employment at Boehringer, Marsh, while acting "within her scope of employment," and as an "employee, agent, and servant of Defendant … and as a senior management officer," "relentlessly expressed anger, resentment, and hostility towards the Plaintiff based on his sex." *Id.* at ¶ 22. As in her first hostile interaction with Plaintiff, she expressed these sentiments via her "tone of voice, body language, and facial expressions." *Id.* Even though Plaintiff

---

[2] As described in more detail below, the only ground on which Plaintiff opposes Defendant's Motion to Compel is the EFAA. The Court therefore recites only those allegations necessary to determine whether Plaintiff's complaint implicates the Act.

did not report directly to Marsh during his first two years at Boehringer, her position allowed her to exert some influence over Payor Sales, and Plaintiff alleges that she consistently attempted to undermine his success. *See id.* at ¶¶ 23–24, 27–30.

On July 1, 2019, Boehringer adopted a new organizational structure in which Plaintiff's Payor Sales team was moved under Market Access, and Plaintiff began reporting directly to Marsh. *Id.* at ¶ 30. He continued to do so until he was terminated in August, 2023. *Id.* at ¶ 15. During this period, Plaintiff alleges that Marsh continued to humiliate and demean him. Though he does not allege that Marsh made any explicitly sexist[3] or sexually suggestive remarks, Plaintiff was able to determine that her conduct was based on his sex due to her "body language, tone of voice, and facial expressions." *See, e.g., id.* at ¶¶ 33, 36, 38, 45, 61, 88.

When he notified Plaintiff of the 2019 reorganization, Boehringer's then-President, Jean-Michael Boers, also indicated that Plaintiff could be a future candidate to backfill Marsh as the SVP of Market Access. *Id.* at ¶ 30. However, Marsh continued to discriminate against Plaintiff on the basis of his sex. She showed favoritism to female employees by promoting them to positions they were unqualified for, to Plaintiff's detriment. *See Id.* at ¶¶ 32, 81. She generally trusted female employees more than males, and provided them with praise, positive evaluations, mentorship, and professional development opportunities while denying the same to Plaintiff. *See id.* at ¶¶ 33, 36–39, 44, 49–53, 56, 58, 62–63, 66–69, 72, 75. And she consistently undermined or otherwise interfered with Plaintiff and his team while minimizing their accomplishments because, Plaintiff avers, the team was "male-led." *Id* at 45; *see also id.* at 35, 40, 46, 51, 55, 57, 66, 74. Plaintiff

---

[3] Though Plaintiff alleges several times that Marsh's actions or words were "sexist," in each case the sexism was evident due to her tone, body language, facial expressions, or from context. *See, e.g.,* Am. Compl. at ¶ 45.

found this type of discrimination "humiliating, degrading, [and] threatening," and alleges that it "created a hostile work environment that changed Plaintiff's conditions of employment." *Id.* at 41.

Plaintiff eventually raised the issue to Marsh, complaining that "she held different standards for him than [for female coworkers]" and informed her that this was "protected activity." *Id.* at ¶ 59. When confronted, Marsh avoided direct discussion of the issue while using her "body language, tone of voice, and facial expressions" to communicate her "clear views that female employees should be favored based on sex." *Id.* at 60. Following his report, Marsh only increased her discriminatory actions, in "direct retaliation" for Plaintiff's complaints. *Id.* at ¶ 61. Plaintiff asserts that Marsh's increasingly sexist treatment following his complaint led to his eventual termination from Boehringer. *Id.* at ¶ 80.

Plaintiff received a performance review in March 2023, in which Marsh provided critical feedback on Plaintiff's performance. *Id.* at ¶¶ 64, 72. Prior to working for Marsh, Plaintiff had not received any critical performance reviews while at Boehringer. *Id.* at ¶ 57. Her comments resulted in Plaintiff receiving a "meets" rating, which negatively affected his salary and career opportunities. *Id.* at ¶ 72. On June 20, 2023, Plaintiff was notified of another organizational restructuring, which created a new sales organization within Boehringer, called "Value & Access." *Id.* at ¶¶ 76–77. Plaintiff was not selected to lead that organization, and had to apply to other roles within the company.[4] Marsh's discriminatory treatment had rendered Plaintiff "a low performing

---

[4] Plaintiff alleges that female employees whose positions were eliminated were provided placement assistance to find new roles, however Boehringer provided no such assistance to him. *Id.* at 82.

executive in the eyes of BI management," and Plaintiff was terminated after he failed to secure a

new position.[5] *Id.* at ¶¶ 80–82. His last day at Boehringer was August 21, 2023.[6]

**Discussion**

### *Validity and Scope of the Arbitration Agreement*

As stated above, the FAA provides that agreements between parties to arbitrate their

disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2. As relevant here, however, in 2022

Congress passed the EFAA, 9 U.S.C. §§ 401–2, which amended the FAA by rendering pre-dispute

arbitration agreements[7] unenforceable in any case "filed under Federal, Tribal, or State law, and

which relates to [a] sexual assault or harassment dispute," upon the election of "the person alleging

conduct constituting a sexual harassment dispute or sexual assault dispute." 9 U.S.C. § 402; *see*

*also Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 539 (S.D.N.Y. 2023).[8] The EFAA defines

a sexual harassment dispute as "a dispute relating to conduct that is alleged to constitute sexual

harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

In determining whether to compel arbitration, courts consider "(1) whether the parties

agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at

---

[5] Plaintiff also alleges that he was discriminated against "because he is Caucasian," when Boehringer did not allow him to apply to one of these alternate internal positions and instead selected an African American candidate. *Id.* at 78–79. Though Plaintiff included these factual allegations in his complaint, he does not assert any cause of action based on racial discrimination, nor would any such claim be relevant to deciding the instant Motion to Compel.

[6] Though Plaintiff's separation agreement included a "very large and substantial financial severance package," he was terminated without any severance after he emailed certain data from work to his personal email address. *Id.* at ¶¶ 83–87, 145–150. This termination is the basis of Count Seven, Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing claim. These allegations have no bearing on the instant Motion to Compel, and so the Court does not further address them here.

[7] The EFAA defines "predispute arbitration agreements" as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(1).

[8] Plaintiff does not allege that he was subjected to any conduct constituting sexual assault. The Court therefore focuses its analysis on Plaintiff's sexual harassment claims.

issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (internal quotation marks omitted). If federal statutory claims are asserted, the court must further determine "whether Congress intended those claims to be nonarbitrable," and "if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 451 (S.D.N.Y. 2024), *reconsideration denied*, No. 23-CV-2879 (VEC), 2024 WL 1160643 (S.D.N.Y. Mar. 18, 2024) (citing *Arnold v. D'Amato*, No. 14-CV-6457, 2015 WL 4503533 at *5 (S.D.N.Y. July 23, 2015); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)).

Boehringer argues that Plaintiff agreed to arbitrate disputes arising out of his employment, including discrimination claims, when he signed an acknowledgment of the Employment Arbitration Agreement upon accepting Boehringer's offer of employment in 2016. Def.'s Mem. in Supp. at 7–11. Plaintiff does not argue otherwise. Rather, Plaintiff asserts only that he has pled a "sexual harassment" dispute, and that therefore enforcement is statutorily barred pursuant to the EFAA. Pl.'s Opp'n at 1–2. Thus, the Court concludes that Plaintiff has conceded that, but for the EFAA, his claims would be subject to mandatory arbitration.[9] *See Martinez v. GAB.K, LLC*, 741 F. Supp. 3d 26, 36 (S.D.N.Y. 2024) (holding that by not disputing the defendants' contention that

---

[9] Even had Plaintiff not conceded the enforceability of the arbitration agreement in the absence of the EFAA, the Court finds Defendant's argument on the issue persuasive. The offer of employment that Plaintiff accepted on September 16, 2016, was expressly conditioned on his acknowledgment and acceptance of the Arbitration Agreement. *See* Offer Letter, ECF No. 21-1, at 9. The Agreement itself is broad and clearly contemplates discrimination and other employment disputes, which "creates a presumption of arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Lok v. Experian Info. Sols., Inc.*, No. 21 CV 154 (NSR), 2022 WL 889215, at *1 (S.D.N.Y. Mar. 25, 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). And the Second Circuit and courts in this district have routinely held that Title VII discrimination claims may be subject to mandatory arbitration. *See, e.g., Daly v. Citigroup Inc.*, 939 F.3d 415, 422 (2d Cir. 2019) (holding that Plaintiff's Title VII claims were arbitrable and noting that the Second Circuit had "conclude[d], along with the majority of other circuits, that Title VII claims could be subject to compulsory arbitration" (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 148 (2d Cir. 2004)); *Wilmore v. Charter Commc'ns LLC*, No. 3:21-CV-01271 (JAM), 2023 WL 2503306, at *7 (D. Conn. Mar. 14, 2023) ("Indeed, the Second Circuit and the Supreme Court have repeatedly held that claims arising under employment discrimination statutes, including Title VII … may be subject to mandatory arbitration…).

the arbitration agreement at issue covered certain non-signatories, plaintiff conceded that it covered those parties); *Simons v. Yale Univ.*, 712 F. Supp. 3d 267, 277 (D. Conn. 2024) ("Plaintiff does not respond directly to Defendants' argument… and so the court considers the point to be conceded."). The enforceability of the Arbitration Agreement therefore turns on a single issue: whether or not Plaintiff has alleged conduct constituting a sexual harassment dispute as defined by the EFAA.

### *Pleading Standard for EFAA Sexual Harassment Claims*[10]

Though the Second Circuit has not yet addressed the issue, district courts in this circuit have "almost uniformly" adopted the "plausibility standard" first articulated in *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 583–88 (S.D.N.Y. 2023), to determine whether a plaintiff has alleged a sexual harassment dispute. *Owens v. PriceWaterHouseCoopers LLC*, No. 1:24-CV-5517-GHW, 2025 WL 1677001, at *6 (S.D.N.Y. June 12, 2025) (collecting cases); *see also Clay v. FGO Logistics, Inc.*, 751 F. Supp. 3d 3, 20 (D. Conn. 2024) (… "the EFAA applies to only *plausibly* pled sexual harassment disputes…"). The court in *Yost*, as a matter of first impression, addressed the question of whether an *implausibly* pled sexual harassment claim allows the claimant to avoid arbitration under the EFAA, "so long as the claim [is] not sanctionably frivolous." *Yost*, 657 F. Supp. 3d, at 584. The *Yost* court first determined that by defining sexual harassment "*under applicable Federal, Tribal, or State law*," the plain language of the statute, 9 U.S.C. § 401(4), "makes the EFAA inapplicable where there has not been an allegation that such conduct violated a law prohibiting sexual harassment," thus precluding a party from invoking the EFAA merely by

---

[10] The parties agree that in order to avoid mandatory arbitration under the EFAA, Plaintiff's sexual harassment claims must be plausibly pled so as to survive a motion to dismiss under Rule 12(b)(6). Def.'s Mem. in Supp. at 12; Pl.'s Opp'n at 14. However, after Plaintiff filed his opposition in this case, a district court in this circuit concluded that any non-frivolous sexual harassment claim could bring a case within the EFAA's ambit, regardless of whether it was plausibly pled for the purposes of a Rule 12(b)(6) motion. *See Diaz-Roa v. Hermes L., P.C*, 757 F. Supp. 3d 498, 530–42 (S.D.N.Y. 2024). Although Plaintiff did not seek consideration under this standard, the Court briefly addresses the competing standards.

labelling conduct as "sexual harassment." *Yost*, 657 F. Supp. 3d at 585 (emphasis in original). The court then concluded that § 401(4) "is best read to implicitly incorporate the plausibility standard" applied to claims under Fed. R. Civ. P. 12(b)(6). *Id.* The *Yost* court cited four distinct reasons for reaching that conclusion, which this Court finds persuasive. *Id.*

First, Rule 12(b)(6) and the plausibility standard it imposes upon pleadings, as established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), are "well-known to Congress," allowing the reasonable inference that in passing the EFAA Congress "was aware that only [plausible] allegations of sexual harassment law had the capacity to proceed past the pleading stage in federal court." *Id.* Second, allowing only plausible claims to trigger the EFAA vindicates the purpose of the Act, by enabling a claimant "to bring her claims of sexual harassment in court and to litigate them there through the point of their durable dismissal." *Id.* at 586. The court reasoned that if all of a plaintiff's claims related to a sexual harassment dispute are implausible under Rule 12(b)(6), the purpose of the EFAA is not served by allowing the remaining claims to proceed in court if they are otherwise subject to binding arbitration. *Id.*[11] Third, the court considered the overall statutory scheme of the FAA—of which the EFAA is a part—and concluded that it could be destabilized by reading the EFAA to "tacitly [] void arbitration agreements after the point at which plaintiffs have proven themselves unable to plead claims of sexual harassment

---

[11] In *Yost* the court addressed a more complicated procedural posture than the instant case. There, following the defendants' motion to compel, the court allowed plaintiff the opportunity to file an amended complaint to "assure that Yost's basis for claiming to have brought a sexual harassment dispute within the EFAA was fully developed in advance of the parties' briefing." 657 F. Supp. 3d at 576. Defendants then moved to dismiss the amended complaint. *Id.* The court therefore had before it both a motion to compel arbitration and a motion to dismiss, and the court granted the motion to dismiss "all sexual harassment claims in the [Second Amended Complaint]" before granting the motion to compel, though it decided both motions in the same opinion. Subsequent courts have applied the *Yost* plausibility standard on motions to compel filed without first dismissing the plaintiff's sexual harassment claims. *See, e.g. Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 260 (S.D.N.Y. 2024), *reconsideration denied*, No. 23-CV-9502 (JPO), 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024) ("Defendants' motion to compel arbitration and stay the case is GRANTED, and Defendants' motion to dismiss the complaint in part is DENIED without prejudice to renewal in the event the stay is lifted.").

consistent with *Iqbal*[.]" *Id.* Fourth, the *Yost* court cited other contexts in which courts have construed the term "allege" in a statute to imply "plausibly allege" in accordance with Rule 12(b)(6). *Id.* at 587.[12] Thus, applying the Court's reasoning in *Yost*, "to qualify as a 'sexual harassment dispute' under the EFAA, the sexual harassment claim must be sufficiently pled to survive a motion to dismiss under Rule 12(b)(6)." *Mitura*, 712 F. Supp. at 451–52. The Court recognizes that the district court in *Diaz-Roa v. Hermes L., P.C.* reached a different conclusion, holding that to properly invoke the EFAA, "a plaintiff need only plead nonfrivolous claims relating to… conduct alleged to constitute sexual harassment." 757 F. Supp. 3d 498, 530–42 (S.D.N.Y. 2024).[13] But the Court is not persuaded that the concerns raised in *Yost,* and the decisions applying its reasoning, can be adequately addressed through the alternative safeguards discussed in *Diaz-Roa.*[14]

---

[12] These include the Resource Conservation and Restoration Act ("RCRA"), the Clean Water Act, and the Fair Labor Standards Act ("FLSA"). *Id.* (citing, inter alia, *S. Rd. Assocs. v. Int'l Bus. Machines Corp.*, 216 F.3d 251, 257 (2d Cir. 2000) (RCRA); *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.*, 989 F.2d 1305, 1315 (2d Cir. 1993) (Clean Water Act); *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (holding that "FLSA plaintiffs must plausibly allege willfulness to secure the benefit of the three-year exception at the pleadings stage.").

[13] The *Yost* plausibility standard remains the majority view. It was employed by multiple district courts prior to *Diaz-Roa*. *See, e.g., Holliday v. Wells Fargo Bank, N.A.*, No. 423CV00418SHLHCA, 2024 WL 194199, at *5 (S.D. Iowa Jan. 10, 2024); *Mitchell v. Raymond James & Assocs., Inc.*, No. 8:23-CV-2341-VMC-TGW, 2024 WL 4486565, at *6 (M.D. Fla. Aug. 23, 2024), *report and recommendation adopted*, No. 8:23-CV-2341-VMC-TGW, 2024 WL 4263151 (M.D. Fla. Sept. 23, 2024). After *Diaz-Roa*, district courts to address the issue in the Eastern District of North Carolina, Southern District of Florida, Middle District of Georgia, Northern District of California, and Eastern District of Tennessee have followed *Yost's* approach. *See Mangum v. Ross Dress for Less, Inc.*, No. 5:24-CV-592-D, 2025 WL 1088366, at *5 (E.D.N.C. Apr. 7, 2025); *Harkins v. Hillstone Rest. Grp., Inc.*, No. 24-23800-CIV, 2025 WL 522674, at *4 (S.D. Fla. Feb. 18, 2025); *Delgado v. Apple Georgia*, LLC, No. 4:24-CV-82 (CDL), 2024 WL 4993645, at *6 (M.D. Ga. Dec. 5, 2024); *Van De Hey v. EPAM Sys. Inc.*, No. 24-CV-08800-RFL, 2025 WL 829604, at *3 (N.D. Cal. Feb. 28, 2025); *Parks v. Nordson Med. of NH Inc.*, No. 1:25-CV-138, 2025 WL 2177177, at *6 (E.D. Tenn. July 31, 2025). In contrast, courts in the Central District of California consistently follow the *Diaz-Roa* non-frivolous standard. *See Holland-Thielen v. Space Expl. Techs. Corp.*, No. 2:24-CV-06972-JAK (RAOX), 2025 WL 2190619, at *12 (C.D. Cal. July 11, 2025)*; Anderson v. Louis Vuitton N. Am., Inc.*, No. CV 25-2878-JFW(MBKX), 2025 WL 1591800, at *5 (C.D. Cal. June 5, 2025); *Solis v. Prime Comms Retail, LLC*, No. 5:24-CV-02389-AH-(SHKX), 2025 WL 1255143, at *2 (C.D. Cal. Apr. 7, 2025); *Gill v. US Data Mgmt.*, LLC, No. 2:24-CV-05255-MCS-MAR, 2024 WL 5402494, at *3 (C.D. Cal. Dec. 2, 2024). They are joined by a court in the Northern District of Illinois, *Thomas v. Pooh Bah Enters., Inc.*, No. 25-CV-77, 2025 WL 2084159, at *4 (N.D. Ill. July 24, 2025), and one in the Eastern District of California, *Cardenas v. F.D. Thomas, Inc.*, No. 2:24-CV-01814-DAD-JDP, 2025 WL 418753, at *4 (E.D. Cal. Feb. 6, 2025).

[14] For example, the Court disagrees that either Rule 11 or the Supreme Court's decision in *Bell v. Hood,* 327 U.S. 678, 682 (1946) (allowing courts to dismiss a claim that "clearly appears to be immaterial and made solely for the purpose

Indeed, the Court agrees with the reasoning in *Yost*. The Second Circuit and the Supreme Court have "repeatedly instructed that the Federal Arbitration Act 'embodies a national policy favoring arbitration.'" *Schnabel*, 697 F.3d at 118 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). It is "beyond dispute that the FAA was designed to promote arbitration." *Concepcion*, 563 U.S. at 346. Accordingly, failing to imply a plausibility requirement in the EFAA would run contrary to the FAA's overall statutory scheme, and would allow plaintiffs to use implausible (though non-frivolous) sexual harassment claims to avoid arbitration. *Yost*, 657 F. Supp. 3d at 586. Such a possibility is out of step with the firmly established intent of the FAA.

The Court therefore joins *Yost* and the majority of district courts to consider the issue and concludes that in order to invoke the EFAA and defeat a motion to compel an otherwise valid arbitration agreement, a plaintiff must allege facts sufficient to plausibly allege conduct related to a sexual harassment dispute.

A sexual harassment claim under the EFAA "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to

---

of obtaining jurisdiction," or "is wholly insubstantial and frivolous"), adequately safeguards against plaintiffs unscrupulously seeking to avoid their arbitration agreements under the auspices of the EFAA. Dismissal of a claim as frivolous under Rule 11 is a "drastic measure," *Azad v. Molina*, No. 24-CV-1623 (JPO), 2025 WL 460058, at *2, n. 2 (S.D.N.Y. Feb. 11, 2025), to be employed "only when it is patently clear that a claim has absolutely no chance of success." *Isaacs v. City of New York*, No. 10-CV-4177 NGG RLM, 2012 WL 976047, at *1 (E.D.N.Y. Mar. 21, 2012) citing *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986)). And under *Bell*, "the right of the [plaintiff] to recover under their complaint will be sustained if the Constitution and law of the United States are given one construction and will be defeated if they are given another." *In re Stock Exchanges Options Trading Antitrust Litig.*, 317 F.3d 134, 150 (2d Cir. 2003) (quoting *Bell*, 327 U.S. at 682–83). Because there is no statutory definition of sexual harassment under Title VII, it would be exceedingly difficult for a court to conclude that a plaintiff's sexual harassment-related claim is so meritless as to warrant dismissal as frivolous or improper under either standard.

a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a claim, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

In the EFAA, Congress elected not to expressly define the term "sexual harassment dispute," and instead relied on "applicable Federal, Tribal, or State Law" to do so. *See Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 255 (S.D.N.Y. 2024), *reconsideration denied,* No. 23-CV-9502 (JPO), 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024).[15] Plaintiff argues that his retaliation/hostile work environment and hostile work environment claims in Counts Three and Five relate to conduct that is plausibly alleged to constitute sexual harassment under Title VII. Similarly, he argues that his retaliation/hostile work environment and hostile work environment claims in Counts Four and Six relate to conduct that is plausibly alleged to constitute sexual harassment under the CFEPA.

### Sexual Harassment under State Law – CFEPA (Counts Four and Six)

The CFEPA, in Conn. Gen. Stat. § 46a-60(b)(8), defines "sexual harassment" as:

> any **unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature** when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment[.]

(emphasis added). *See also Carini v. Jacobs Eng'g Grp., Inc*., No. 3:22-CV-787 (JAM), 2024 WL 4226911, at *3 (D. Conn. Sept. 18, 2024).

---

[15] An earlier version of the bill defined a "sexual harassment dispute" as "a dispute relating to any of the following conduct directed at an individual or a group of individuals: (A) Unwelcome sexual advances.; (B) Unwanted physical contact that is sexual in nature, including assault.; (C) Unwanted sexual attention, including unwanted sexual comments and propositions for sexual activity.; (D) Conditioning professional, educational, consumer, health care or long-term care benefits on sexual activity.; (E) Retaliation for rejecting unwanted sexual attention." 168 Cong. Rec. H983-09, H984. Representative Ken Buck introduced the amendment that was eventually passed into law, using applicable federal, tribal, or state law to define a "sexual harassment dispute," in order to clarify that the definition would not supersede any existing federal, state, or tribal law. 168 Cong. Rec. H983-09, H992

With respect to the CFEPA claims in Counts Four and Six, nowhere in his amended complaint does Plaintiff allege that Marsh or anyone else at Boehringer made any unwelcome sexual advances, requests for sexual favors, or engaged in conduct of a sexual nature. Such allegations are necessary for a claim to constitute sexual harassment as defined by the CFEPA. *See Bracey v. Ne. Utilities Serv. Co.*, No. CV126027883S, 2013 WL 6334262, at *9 (Conn. Super. Ct. Nov. 1, 2013) ("It is fundamental to a claim of sexual harassment that the conduct at issue must be sexual in nature."). As Plaintiff has failed to plausibly allege sexual harassment under Connecticut law, these claims do not implicate the EFAA.[16]

### *Sexual Harassment under Federal Law – Title VII (Counts Three and Five)*

Under Title VII, a claim of "sexual harassment in the work place can proceed under two theories: quid pro quo harassment and a hostile work environment." *Owens v. PriceWaterHouseCoopers LLC*, No. 1:24-CV-5517-GHW, 2025 WL 1677001, at *10 (S.D.N.Y. June 12, 2025) (citing *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998)). Plaintiff brings two Title VII claims that he argues constitute sexual harassment disputes for the purposes of the EFAA. Pl.'s Opp'n at 1–2. He alleges that Marsh's conduct as his supervisor created a generally hostile work environment based on his sex (Count Five), and that she retaliated against him by intensifying that hostility after he complained to her about being discriminated against based on his sex (Count Three). Am. Compl. at ¶¶ 109–117, 127–135.

---

[16] The Court notes that the CFEPA, in Conn. Gen. Stat. § 46a-60, defines sexual harassment, *see* § 46a-60(b)(8), separately from discrimination based on sex, *see* § 46a-60(b)(1). Because of this construction, a plaintiff could allege a sex-based hostile work environment claim without alleging sexual harassment under the statute. *See Patino v. Birken Mfg. Co.*, 304 Conn. 679, 697 (2012) (holding that the "terms, conditions, or privileges of employment" language in § 46a-60(b)(1) evinced the Connecticut General Assembly's intent to allow a hostile work environment claim based on discrimination for any protected class defined therein); *Kenney v. Connecticut Dep't of Mental Health & Addiction Servs.*, No. CV020813589S, 2011 WL 1105812, at *3 (Conn. Super. Ct. Mar. 4, 2011) (describing an earlier case in which a Plaintiff was "non-sexually harassed by one of her supervisors because of her gender").

Title VII provides, in relevant part that, ""[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment," and provides the basis for sex-based hostile work environment claims. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–66 (1986) (internal citation and quotations omitted). Though Title VII's statutory text does not expressly reference "sexual harassment," Courts since *Meritor* have held that "discrimination because of sex" includes sexual harassment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (alterations omitted); *see also, e.g. Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) ("it is established "[w]ithout question, [that] when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex.") (quoting *Meritor*, 477 U.S. at 64, emphasis removed). However, the Supreme Court has recognized that "'[s]exual harassment' is conceptually distinct from sex discrimination, but it can fall within Title VII's sweep." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669 (2020). It therefore follows that, under Title VII, while all sexual harassment "that meets the statutory requirements" is prohibited discrimination, *Oncale*, 523 U.S. at 80, not all sex-based discrimination is sexual harassment.

### Distinction Between *Sexual* Harassment and Gender/Sex-Based Discrimination/Harassment

Congress passed the EFAA on February 10, 2022, and it was signed into law on March 3, 2022, almost two years after the Supreme Court's decision in *Bostock*. PL 117-90, March 3, 2022, 136 Stat 26. "Congress is presumed to legislate with familiarity of the legal backdrop for its legislation." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 114 (2d

Cir. 2017) (citing *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). The Court must presume that, in drafting the EFAA, Congress understood the distinction drawn by the *Bostock* court, and therefore intended to exempt from arbitration only the subset of sex discrimination claims that constitute sexual harassment under Title VII.

Guidelines published by the Equal Employment Opportunity Commission ("EEOC"), define sexual harassment to include "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." 29 C.F.R. § 1604.11. Courts in this district and circuit often refer to these guidelines when defining sexual harassment under Title VII. *See, e.g., Champagne v. Columbia Dental, P.C.*, No. 3:18-CV-10390 (VLB), 2019 WL 5726921, at *3 (D. Conn. Nov. 5, 2019); *Salen v. Blackburn Bldg. Servs., LLC*, No. 3:14-CV-01361-VAB, 2017 WL 71708, at *8 (D. Conn. Jan. 6, 2017); *Brookdale Hosp. Med. Ctr. v. Loc. 1199, Nat. Health & Hum. Serv. Emps. Union*, 107 F. Supp. 2d 283, 290 (S.D.N.Y. 2000). Indeed, the Supreme Court in *Meritor* discussed the role of the EEOC Guidelines in establishing hostile work environment sexual harassment as a prohibited form of discrimination under Title VII. *See Meritor* 477 U.S. at 65–67.

Similarly, other circuit and district courts, drawing a distinction between sexual harassment and sexual discrimination claims, oft hold that sexual harassment entails sexual conduct. *See Allen v. Ambu-Stat, LLC*, 799 F. App'x 703, 707 (11th Cir. 2020) (holding that to survive summary judgment on a sexual harassment claim a plaintiff must establish, *inter alia*, that they were "subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature[.]"); *Froby v. Clark Cnty. Sch. Dist.*, 669 F. App'x 903, 904 (9th Cir.

2016) ("While sexual harassment *must be sexual in nature*, 'offensive conduct that is not facially sex-specific nonetheless may violate Title VII if there is sufficient circumstantial evidence of qualitative and quantitative differences in the harassment suffered by female and male employees.'" (quoting *Arizona ex rel. Horne v. Geo Grp.*, Inc., 816 F.3d 1189, 1207, n. 12 (9th Cir. 2016), emphasis added)[17]; *Cornelius v. CVS Pharmacy, Inc.*, No. CV 23-01858 (SDW) (AME), 2023 WL 6876925, at *3 (D.N.J. Oct. 18, 2023), *aff'd in part, vacated in part, remanded*, 133 F.4th 240 (3d Cir. 2025) ("Notably, for the purposes of a Title VII claim, sex discrimination differs from sexual harassment. 'Sex discrimination is discriminating against someone because of his or her sex, while sexual harassment is unwelcome sexual advances or other verbal or physical contact of a sexual nature.'" (quoting *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 692 (E.D. Pa. 2020)); *Stephens v. DFW LinQ Transp.*, *Inc.*, No. 3:24-CV-00352-N, 2025 WL 1697537, at *3 (N.D. Tex. June 16, 2025) ("Title VII distinguishes between sexual harassment and sex ... discrimination… The former involves unwelcome sexual advances or other verbal or physical conduct of a sexual nature, whereas the latter refers to discriminating against someone because of their [protected characteristic]." (citing *Lopez v. AT&T Mobility Servs. LLC*, 2025 WL 600120, at *7 (W.D. Tex. 2025)).

Given the Supreme Court's recognized distinction between discrimination claims and harassment claims; its recognition that sexual harassment necessarily includes "conduct … tinged with offensive sexual connotations," *Oncale*, 523 U.S. at 80–81; the number of courts that require such allegations in a sexual harassment claim; and the EEOC guidelines themselves; the Court

---

[17] The Ninth Circuit in *Arizona ex rel. Horne* contemplated a distinction between two types of actionable hostile work environment claims based on sex, one in which the plaintiff is "actually sexually harassed," and one in which the plaintiff is "harassed on the basis of her sex." 816 F.3d at 1207.

concludes that a sexual harassment claim must go beyond gender based discrimination and include conduct that is offensive and sexual in nature.

Turning to Plaintiff's allegations, the Court concludes that Plaintiff's Title VII claims do not plausibly allege a hostile work environment based upon sexual harassment, either directly or as connected to his claim of retaliation. Indeed, Plaintiff's Title VII claims fail to trigger the EFAA for the same reason as his CFEPA claims—he simply does not allege any "conduct of a sexual nature." He does not allege unwanted sexual advances, requests for sexual favors, or any other interaction of a sexual nature with Marsh (or anyone else). While Plaintiff clearly alleges gender discrimination and arguably alleges hostility directed at him on account of his sex/gender, there is nothing remotely sexual about these interactions. To the contrary, Plaintiff alleges that Marsh was unkind, cold, dismissive, and difficult, because he is male. These allegations, even if they constitute a hostile work environment (which the Court holds they do not, as discussed below), fail to meet the threshold for sexual harassment.[18]

The Court recognizes that the term "sexual harassment" has, in some cases, been applied broadly to include merely *gender-based* hostile work environment claims, *see, e.g., Brown v. Hearst Corp.*, No. 3:14-CV-1220-VLB, 2015 WL 5010551, at *6 (D. Conn. Aug. 24, 2015),[19] but

---

[18] The same is true of Plaintiff's retaliation claim. The Second Circuit has held that a retaliation claim "resulting from a report of sexual harassment is 'relat[ed] to conduct that is alleged to constitute sexual harassment,'" thus satisfying the EFAA's definition of a sexual harassment dispute. *Olivieri v. Stifel, Nicolaus & Co., Inc.,* 112 F.4th 74, 77 (2d Cir. 2024) (quoting 9 U.S.C. § 401(4)). Although Plaintiff adequately alleges retaliation in response to his gender discrimination complaint, as the Court has concluded that the conduct he complained of does not sound in sexual harassment, his retaliation claim does not derive from a "sexual harassment dispute" as required under the EFAA. In his Amended Complaint, Plaintiff expressly claimed that Marsh retaliated against him "after he complained of *discrimination*," specifically "when he complained to Defendant about *sex based discrimination* in that he was being treated less favorably than … his similarly situated female colleagues." Am. Compl. at ¶¶ 110–11 (emphasis added). By Plaintiff's own account, Marsh retaliated against him because he reported incidences of sex-based discrimination, not sexual harassment as required by *Olivieri.*

[19] The court in *Brown* relied on *Gregory v. Daly,* 243 F.3d 687, 695 (2d Cir. 2001), *as amended* (Apr. 20, 2001), which noted that the Second Circuit "has found workplace situations discriminatory under a hostile work environment theory where the conduct at issue, though lacking any sexual component or any reference to the victim's sex, could, in context, reasonably be interpreted as having been taken on the basis of plaintiff's sex." *Gregory* in turn cited *Williams v. General Motors Corp.,* 187 F.3d 553, 565 (6th Cir.1999) for the proposition that "the conduct underlying a sexual

the Court joins those that have drawn a distinction between gender-based discrimination or harassment and sexual harassment, a term long recognized as implicating not just gender but sexual conduct. Indeed, the dictionary definition of sexual harassment is "uninvited and unwelcome verbal or physical behavior of a sexual nature especially by a person in authority toward a subordinate (as an employee or student)." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 1141 (Frederick C. Mish et al. eds., 11th ed. 2009); *see also Sexual Harassment*, THE AMERICAN HERITAGE DICTIONARY, https://ahdictionary.com/word/search.html?q=sexual+harassment (last visited Aug. 18, 2025) ("Inappropriate behavior of a sexual nature, such as repeated sexual advances or offensive remarks, that occurs usually in a workplace, school, or other institutional setting, especially by a person in authority with respect to a subordinate or a student."); *Sexual Harassment*, DICTIONARY.COM, https://www.dictionary.com/browse/sexual%20harassment (last visited Aug. 18, 2025) ("unwelcome sexual advances, either verbal or physical, especially by someone with power or authority.").

### Failure to Plausibly Allege a Hostile Work Environment

Notwithstanding the above analysis, even if there were no distinction to be drawn between gender or sex-based discrimination and sexual harassment, Plaintiff has not plausibly alleged that he was subject to a hostile work environment. "To state a claim for a hostile work environment in

---

harassment claim need not be overtly sexual in nature" and which held that "*any* unequal treatment of an employee *that would not occur but for the employee's gender* may… constitute a hostile environment in violation of Title VII" (emphasis in original). However, the Court notes that the claims in both *Gregory* and *Williams* involved conduct far more overtly sexual than Plaintiff's claims in the instant case. *See Gregory,* 243 F.3d at 690 (defendant, *inter alia* "asked [plaintiff] if she knew what a 'sexual perpetrator' was, explained 'in graphic detail[ ]' how a rape may occur, told her 'how easy it is to rape a woman,' and 'described sodomy and anal intercourse relating to boys in detail.'"); *Williams*, 187 F.3d at 559 (plaintiff's supervisor looked at her breasts and said "You can rub up against me anytime,'" said "'You would kill me, Marilyn. I don't know if I can handle it, but I'd die with a smile on my face," and when plaintiff was bending over came up behind her and said "'Back up; just back up,' or 'You can back right up to me,' or words to that effect."). Further, both *Gregory* and *Williams* pre-date the passage of the EFAA, which, in the Court's view, renders the Supreme Court's distinction between sex-based discrimination and sexual harassment in *Bostock,* of greater import.

violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive -- that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Miro v. City of Bridgeport*, No. 3:20CV00346(SALM), 2022 WL 3284400, at *4 (D. Conn. Aug. 11, 2022) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). Nothing in the Amended Complaint allows the Court to infer that the conduct to which Plaintiff was subjected was objectively severe.

Because there is no "mathematically precise test" for severity or pervasiveness, courts must "assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,'" as well as its effect on the employee's psychological well-being. *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993)). "[A] plaintiff must show that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris*, 510 U.S. at 21).

Even considered in conjunction with his allegedly disparate treatment as compared to his female counterparts, Plaintiff's allegations do not evince conduct severe enough to sustain his hostile work environment claims. He does not allege that Marsh, in the more than six years that they worked together, engaged in any conduct that a reasonable person would find physically threatening, nor that she used any language that a reasonable person would find patently offensive.

According to the Amended Complaint, Marsh only conveyed her apparent animus via her "body language," "tone of voice," and "facial expressions," which Plaintiff references over twenty times each throughout his allegations. Even multiple occurrences of such conduct, that is by its nature only subjectively offensive, cannot sustain a hostile work environment claim.

Notably, Plaintiff never describes Marsh's body language, tone of voice, or facial expressions in any detail, except to characterize them in general and self-serving terms such as "derogatory," "dismissive," "hateful," or "sexist." *Id.* at ¶¶ 38, 47. Courts have generally found such conclusory allegations or labels insufficient to sustain a hostile work environment claim. *See Fiorillo v. United Techs. Corp.*, No. 3:13-CV-1287 (VLB), 2016 WL 1118789, at *21 (D. Conn. Mar. 21, 2016) (holding that "unspecified facial gestures and verbal tones" did not "evince an objectively hostile work environment"); *Irrera v. Humpherys*, 695 F. App'x 626, 629 (2d Cir. 2017) (holding, in the context of Title IX, that "[Plaintiff] does not plausibly allege that [defendant's] sporadic winks, leers, and blown kisses were 'sufficiently severe or pervasive to alter the conditions of his educational environment.'"); *Mira v. Argus Media*, No. 15-CV-9990 (RJS), 2017 WL 1184302, at *6 (S.D.N.Y. Mar. 29, 2017) (plaintiff's allegations that, *inter alia*, defendant greeted her in a "highly personal, sexualized voice tone" were "perhaps vaguely offensive, but certainly not threatening" and did not interfere unreasonably with plaintiff's job performance). And Plaintiff's allegations that Marsh was unduly critical of him, withheld praise, and denied him professional development opportunities are similarly "too trivial to contribute to a Title VII hostile workplace claim." *Perez v. City of New York*, No. 1:23-CV-00447 (CM), 2024 WL 898943, at *12 (S.D.N.Y. Feb. 29, 2024) (collecting cases). Plaintiff has therefore failed to plausibly allege the existence of a hostile work environment.

Plaintiff does not contest the validity of the Arbitration Agreement, and relies exclusively on the EFAA to avoid arbitration. Because none of his claims implicate the EFAA's protection, they are subject to mandatory arbitration pursuant to the terms of the Arbitration Agreement.

**Conclusion**

For the foregoing reasons, Defendant's Motion to Compel Arbitration and to stay all proceedings pending Arbitration (ECF No. 20) is GRANTED.

The Court orders the parties to arbitrate their claims under 9 U.S.C. § 4. These proceedings are hereby STAYED as between the parties under 9 U.S.C. § 3.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of August, 2025.

                                */s/ Kari A. Dooley*
                                KARI A. DOOLEY
                                UNITED STATES DISTRICT JUDGE